FRIEDA S. MILLER, as Industrial Commissioner of the State of New York, on Behalf of the State Insurance Fund, Plaintiff, *v.* GARFORD LABORATORIES, INC., and GARLAND LABORATORIES, INC., Defendants.

Municipal Court of New York, Borough of Manhattan, Fifth District, May 26, 1939.

*Bernard Botein* [*Harry Schechter* and *William H. Stieglitz* of counsel], for the plaintiff.

*Hermelin & Tischler*, for the defendants.

WHALEN, J. Plaintiff sues to recover $772.66 as additional premiums alleged to be due from defendants on a policy of workmen's compensation insurance issued by the State Insurance Fund to

defendants. The claim is based on plaintiff's audit of defendants' payroll for the period June 3, 1936, to June 29, 1937. Defendants concede liability in the sum of $43.69.

This difference of opinion is accounted for by the fact that plaintiff has included in the payroll certain individuals alleged by plaintiff to be employees and by defendants to be students.

Defendants conduct a school for the teaching of the art of beauty culture designed to train the students to become operators in beauty parlors. The students pay a tuition fee. Teachers are employed to instruct the students. The course ordinarily consists of twenty-six weeks, the first half of which, or thirteen weeks, are devoted to class instruction and training with the aid of inanimate mannikins. During the second period of thirteen weeks the students, under supervision of teachers, render services such as manicuring, hair waving, etc., to the public.

In effect, they practice on the public and perfect their technique. The patrons pay defendants for these treatments at prices lower than those generally charged and the students receive no pay from either the patrons or defendants, but the testimony discloses that they occasionally receive tips, usually five or ten cents, from the patrons, although defendants claim that they have a rule against the acceptance of tips.

Defendants having taken out workmen's compensation insurance, are bound to include all employees. (*Matter of Krinsky* v. *Ward & Gow*, 193 App. Div. 557; affd., 231 N. Y. 525; affd., 259 U. S. 503.) Employees of barber shops are included within the group of hazardous employments. (Workmen's Comp. Law, § 3.) The case, therefore, turns on the question as to whether or not these students may be deemed to be employees for the purpose of the Workmen's Compensation Law. Section 2 of the law gives the following definitions:

" 3. ' Employer ' except when otherwise expressly stated, means a person, * * * employing workmen in hazardous employments. * * *

" 4. ' Employee ' means a person engaged in one of the occupations enumerated in section three or who is in the service of an employer whose principal business is that of carrying on or conducting a hazardous employment * * *.

" 5. ' Employment ' includes employment only in a trade, business or occupation carried on by the employer for pecuniary gain, or in connection therewith." .

The business of operating a beauty parlor has been held to be one of the hazardous employments mentioned in section 3. (Infor-

mal Opinion, Attorney-General, Aug. 1, 1935 [not reported]; *People* [*Levy*] v. *Sommerville,* 167 Misc. 89.)

It seems to me that during the period that these students are practicing their art on the public for pecuniary gain paid to the defendants, they are employees. Defendants contend that they are not employees for the reason that they are not sufficiently under the direction and control of the defendants in that they are not disciplined for lateness or absence, and that they are volunteers. Defendants' witnesses testified that the students work under the supervision of the teachers, that they must put in so many hours before being entitled to a certificate and that if they lose time, it must be made up later.

There is no single test that may be applied to determine whether or not a certain individual is an employee within the meaning of the Workmen's Compensation Law. A person may be considered an employee under this law and not an employee in the meaning of the law of negligence. (*Matter of Dale* v. *Saunders Bros.,* 218 N. Y. 59, 62.)

I believe there is sufficient direction and control of the students by the defendants and sufficient compulsion as to the doing of the work necessary to entitle them to a certificate to take them out of the class of independent contractors or volunteers. If in case of accident one of the students working upon the public were injured in what has been held to be hazardous employment, she would be entitled to compensation, and if that be so, then there is no reason why she should not be included in the payroll on which premiums are based.

The status of these students while rendering service to the public for pecuniary gain flowing to the defendants is very similar to the status of the old-time apprentice. While all the attributes and legal consequences of the apprenticeship relation are not present here, most of them are. The apprentice rendered services to his master in some trade or employment with the primary purpose of learning the trade, or business or profession of the master. The apprentice usually received no remuneration or very little remuneration, outside of his board and lodging. For services rendered by him, no doubt the master received payment from the public. Can one doubt that if we had apprentices working today they would be held to be within the protection of the Workmen's Compensation Law?

In Bouvier's Law Dictionary (Rawle's Rev.) an apprentice is defined as " A person bound in the form of law to a master, to

learn from his art, trade, or business, and to serve him during the time of his apprenticeship."

" To employ is to engage or use another as an agent or substitute in transacting business, or the performance of some service; it may be skilled labor in the services of the scientist or professional man as well as servile or unskilled manual labor." (*Gurney* v. *Atlantic & G. W. R. Co.*, 58 N. Y. 358, 371.)

While one of the purposes of the defendants in permitting the students to practice their art on the public was to increase their proficiency, another material purpose was to derive pecuniary gain for the services rendered, and while the students are so engaged, defendants were operating both a school and a commercial beauty parlor.

One great difficulty in this case is the question as to the amount of wages to be assigned to each of these students on the payroll. Plaintiff allows fifteen dollars as an arbitrary minimum rate of wages by reason of, *first,* a rule in the rate manual of the Compensation Rating Board to which the policy is specifically made subject; *second,* by reason of an indorsement attached to and forming part of the policy issued to defendants. The sum of fifteen dollars per week seems all out of proportion to the tips received by these students as shown by the testimony. Inasmuch as it is clear to me that the students do receive tips and the rider is part of the policy issued originally in June, 1933, and renewed automatically annually thereafter, I see no other way of disposing of the question than by accepting that arbitrary figure.

However, the auditor apparently has listed all of the students, apparently without differentiating between those taking the first part of the course and those taking the second part. It is obvious that during the first period, students are not employed within the meaning of the Workmen's Compensation Law, so that during half of their course they should be excluded from the payroll. The difference between the sum claimed by plaintiff ($772.66) and the sum conceded by defendant ($43.69) is $728.07. Half of this, or $364.48, should be added to the conceded amount, making a total of $408.17, for which plaintiff is entitled to judgment.